# CHARLESTON.

## STATE *v.* COLLINS.

### (Misdemeanor No. 3).

### Decided May 17, 1910.

INTOXICATING LIQUORS—*Illegal Sale—Evidence—"Rake-Off."*

Upon an indictment against C. for unlawfully selling spirituous liquor, wine, porter, ale, beer, etc., without a state license, the following facts were proven, viz: C. kept a room in which he conducted a game with cards, called "stud poker"; chips, valued at 5c, 10c and 25c each, were used to represent money; at the beginning of each game a player would purchase a number of these chips from C. and pay the money for them; during the progress of the game C. would supply the players with beer and would take a portion of the chips, which was called a

"rake off"; at the end of the game the remaining chips in the hands of the winner were "cashed in," or redeemed by C.

*Held:* The jury could infer that the "rake off" was in consideration of the beer furnished to the players, and that it constituted a sale of the beer.

Error to Circuit Court, Pocahontas County.

W. T. Collins was convicted of an illegal sale of liquor, and brings error.

*Affirmed.*

*Cunningham & Stallings* and *D. E. Cuppett,* for plaintiff in error.

*William G. Conley,* Attorney General, for the State.

WILLIAMS, JUDGE:

Defendant was tried and convicted in the circuit court of Pocahontas county on the 25th of January, 1908, for unlawfully selling spirituous liquors, without a state license, and was fined $100 and sentenced to imprisonment for thirty days in the county jail. Conviction was had upon the testimony of Stanley Conover. Defendant offered no testimony, and relies upon the insufficiency of the state's evidence to prove his guilt. The facts upon which the jury found a verdict are as follows, viz: Collins occupied a room in the basement of a building at Dunlevie in Pocahontas county, in which he conducted a game, called by the witness "stud poker". Persons would go into this room, sometimes as many as six or eight in number, and would buy from Collins poker chips which were used in the game to represent money. The gambling would continue sometimes from two to four hours during the evening, or night. Beer was furnished to those engaged in the play, without any additional cost to the players, except the price which they paid for the poker chips at the beginning of a game. The poker chips were valued at 5c., 10. and 25c. each. At the end of each game, Collins would take a portion of the chips as a "rake off". The chips remaining in the hands of the winners at the end of a game would be "cashed in", or redeemed. Counsel for Collins contends that the "rake off" was not for the price of the beer furnished, but was intended as compensation to Collins for maintaining the place of amusement. Con-

over says that those who 'were engaged in the game got beer when they called for it; that he did not know for what purpose the "rake off" was taken; that when the game 'was finished, if a player had any chips, they were "cashed in"; that sometimes, in one night, they would play as many as eighty or one hundred "pots", with probably seven persons engaged in the games, and that Collins would take a "rake off" at the end of every "pot", or game. He further says that he knew he could get beer by going into this place, but that he did not pay for it, unless it was paid for by means of the "rake off"; that he does not know why the "rake off" 'was taken, but that everyone in the game got beer, who called for it; and that nothing was paid for the privilege of playing in the room, unless it was paid for by means of the "rake off".

The jury had the right to infer, from these facts, that the gambling device was a mere trick, or 'subterfuge, adopted by Collins for the purpose of selling beer in violation of law. They might well have concluded that the "rake off", taken out of the chips previously purchased by the players, represented the price paid for the beer, because the chips thus taken were not redeemed by Collins. All others were redeemed; or, as 'witness puts it, were "cashed in". If the "rake off" was, in fact, taken in consideration of the beer furnished to the players by Collins, it constituted a sale of the beer to them by him, and was paid for in advance, by the purchase of the chips at the beginning of the game.

"In any case where a sale, or gift, of liquors would be contrary to law, the Courts will refuse to countenance any trick, artifice or subterfuge intended to evade the law. However, the parties may disguise or conceal the transaction, whatever verbal or circumstantial device they may employ to cloak the real purpose, it is enough to sustain a conviction if liquor was actually sold or given in violation of law, or evasion of its terms". Black on Intoxicating Liquors, section 405. The text is supported by the following decisions: *State* v. *Cutting,* 3 Ore. 360; *Looney* v. *State,* 43 Ark. 389; *Archer* v. *State,* 45 Md. 34. See also our own case of *State* v. *Doyle,* 64 W. Va. 366.

The positive statement of the witness that he did not pay

for any beer, is not sufficient to overcome the presumption arising from the undisputed facts, that a sale was made by some indirect method. The witness' statement that he did not buy the beer, viewed in the light of the facts proven, should be taken as simply an expression of his opinion of what constituted a sale, and not as the statement of a fact.

The facts established, and not denied, tend strongly to prove that the poker game was a mere device, or subterfuge, to conceal defendant's real business, which was selling spirituous liquors, etc., unlawfully, and without a state license therefor. In such cases as this the jury are almost always the sole judges of the weight of the evidence, and of the importance of every reasonable inference to be deduced from the facts proven. *State* v. *Boyer*, 43 W. Va. 180. The verdict is not without strong circumstantial evidence to support it, and we would not be justified in setting it aside.

The State's instruction, complained of, is based upon the theory that the jury had a right to infer, from the facts proven, that the poker game was a mere subterfuge, or device, for the purpose of evading the law, and that they could find the defendant guilty, if they believed the beer was paid for by means of the "rake off". This instruction states the law correctly, and it was not error to give it.

The defendant's instruction is based upon the theory that the jury could not infer, from the facts proven, that an unlawful sale of beer had been made. This is not the law, and it was not error to refuse this instruction.

Collins was at the same term of the circuit court of Pocahontas county convicted of a second offense for unlawful selling, denominated Misdemeanor No. 5. This case is also here for review. The evidence is similar, and the instructions and the judgment of the court are the same in both cases. The same errors are assigned in each, and the foregoing opinion and syllabus applies to both.

We find no error in the record of either case, and the judgments in both will be affirmed.

*Affirmed.*